**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INNESSA EGOROVNA GOLOSHUBOVA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-cv-558 |
| ) | |
| JANET NAPOLITANO, ET AL. ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Innessa Egorovna Goloshubova ("Plaintiff") filed a complaint against Defendants Janet Napolitano, Secretary of Homeland Security, Eric Holder, Attorney General of the United States, and Ruth Dorochoff, District Director at the Chicago District Office of Citizenship & Immigration Services (collectively "Defendants"), seeking judicial review of Defendants' denial of her naturalization application. Before the Court is Defendants' motion to dismiss [13] for failure to state a claim. For the reasons set forth below, the Court grants Defendants' motion [13] and dismisses Plaintiff's complaint without prejudice.

**I.  Background**

Plaintiff, a Belarus national, entered the United States on July 20, 1997. On July 6, 2001, an immigration judge granted refugee status to Alexey Goloshubov, Plaintiff's husband at the time, and Plaintiff and her son became refugees. On July 29, 2002, Plaintiff filed for adjustment of status, pursuant to § 209 of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1159. After filing for adjustment of status, on October 24, 2002, Plaintiff and her husband divorced. On December 20, 2005, over three years after filing her request for adjustment of status, Ms. Goloshubova was accorded lawful permanent residence status as of December 20, 2004. United

States Citizenship and Immigration Services ("USCIS") did not interview Plaintiff prior to granting her adjustment of status or request an update from her regarding any change in her marital status, nor did Plaintiff provide one. Plaintiff alleges that USCIS never advised her that she should update USCIS as to any changes in her personal circumstances.

Plaintiff then applied for United States citizenship. Plaintiff filed Form N-400, Application for Naturalization, in accordance with the procedures set forth in § 334 of the INA, 8 U.S.C. §1445. Plaintiff averred that on December 20, 2005, she had been granted lawful permanent resident status as of December 20, 2004, that she resided in the United States for a continuous period of 60 months prior to the filing of her petition, and that she was a person of good moral character as defined in § 101(f) of the INA. See 8 U.S.C. §1101(f). As part of the application process, naturalization officers investigated Plaintiff and interviewed her on May 10, 2010. On July 20, 2010, Defendants denied the application for naturalization on the grounds that Plaintiff was not lawfully admitted for permanent residence because her marriage was terminated before her Form I-485 was approved on December 20, 2005. On August 18, 2010, Plaintiff appealed the decision, and a hearing was held on September 13, 2010, before an appeals hearing officer of USCIS. On September 27, 2010, USCIS denied Plaintiff's Petition for Naturalization, based on USCIS's determination that Plaintiff was erroneously granted lawful permanent resident status as of December 20, 2004.

On January 25, 2011, Plaintiff filed the instant complaint. On July 25, 2011, Immigration and Customs Enforcement ("ICE") issued a notice to appear for Plaintiff, which placed her in removal proceedings. The notice to appear indicated that Plaintiff was not a derivative asylee at the time of her adjustment of status because she and her spouse were divorced on October 24, 2002, three years before she was accorded lawful permanent residence status. Defendants have

moved to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.  Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III.  Analysis

Defendants contend that the Court may not consider Plaintiff's naturalization application because she is in removal proceedings. Plaintiff maintains that "Defendants incorrectly argue that 8 U.S.C. § 1429 divest [sic] this Court of jurisdiction because of the pending removal proceedings initiated after Innessa's Petition was filed with this Court." Resp. at 5. As pointed

3

out by Defendants in their reply brief, Defendants do not in fact argue that this Court does not have jurisdiction; rather, Defendants contend that the Court lacks the authority to compel USCIS to do something that it is not statutorily authorized to do. Thus, Defendants are not moving for dismissal pursuant to Rule 12(b)(1), but rather under 12(b)(6).

Certain aliens may apply to become naturalized citizens of the United States. Generally, aliens who were lawfully admitted to permanent residence and who have held lawful permanent resident status for at least five years may apply. 8 U.S.C. § 1427(a). Under 8 U.S.C. § 1421(a), "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." The same section provides for *de novo* judicial review: "A person whose application * * * is denied * * * may seek review of such denial before the United States district court or the district in which such person resides * * *." See 8 U.S.C. § 1421(c).

Throwing a wrench into the procedures, at least as far as this case is concerned, is § 1429, which provides that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act." Defendants interpret this to mean that removal (or deportation) proceedings have priority over the naturalization process, and therefore § 1421(c) review cannot proceed once removal proceedings have been commenced. In other words, Defendants maintain that any right that Plaintiff has to judicial review under § 1421(c) is limited by § 1429. See *Barnes v. Holder*, 625 F.3d 801 (4th Cir. 2010) ("However, any right that Barnes might have under § 1421(c) is limited by 8 U.S.C. § 1429 * * *."). While the Seventh Circuit has not addressed this issue, the circuits that have considered the issue uniformly have concluded that in light of 8 U.S.C. § 1429, § 1421(c) review may not proceed once removal proceedings have commenced. See *Zayed v. United States*, 368 F.3d 902, 906 (6th

4

Cir. 2004); see also *Barnes*, 625 F.3d at 806-07; *Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008); *Saba-Bakare v. Chertoff*, 507 F.3d 337, 340 (5th Cir. 2007); *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004). The circuit courts have determined that, in passing § 1429, Congress "clearly intended to give removal proceedings priority over naturalization." *Barnes*, 625 F.3d at 806 (appearing to go a step further than previous circuits in stating that "an alien in removal proceedings * * * [has] no right to review of his naturalization application"); *Ajlani*, 545 F.3d at 236 (noting that "the priority afforded removal proceedings by § 1429 limits the courts' authority to grant naturalization pursuant to § 1421(c) or § 1447(b)").

In *Zayed v. United States*, the Sixth Circuit held that a litigant in Plaintiff's position, who was placed in removal proceedings after USCIS denied her naturalization application, is barred from naturalizing, and a district court may not rule otherwise. 368 F.3d at 906. Plaintiff offers no court of appeals decisions to the contrary, and the Court, in its own review of the case law, has not discovered any divergent authority from the circuit courts. The only contrary authority comes from district courts in other circuits. See, e.g., *Gonzalez v. Napolitano*, 684 F. Supp. 2d 555, 560-63 (D.N.J. 2010) (holding that INS should not be allowed to circumvent judicial review of naturalization applications by initiating removal proceedings); *Grewal v. Ashcroft*, 301 F. Supp. 2d 692, 695-97 (N.D. Ohio 2004) (same).[1] Plaintiff maintains that some of the circuit court cases cited above were brought under the delay provision, 8 U.S.C. § 1447(b), not under § 1421(c). However, the decisions from the Sixth, Fifth, and Fourth Circuits (*Zayed*, *Saba–Bakare*, and *Barnes*) were § 1421(c) cases. Additionally, while the Second Circuit's decision in *Ajlani* was a § 1447(b) case, both the holding and dicta strongly implied that § 1421(c) cases would be treated no differently. See *Ajlani,* 545 F.3d at 239 ("Three of our sister circuits have considered the question and concluded that the priority afforded removal proceedings by § 1429

---

[1] *Grewal v. Ashcroft* was decided before the Sixth Circuit's opinion in *Zayed*.

limits the courts' authority to grant naturalization *pursuant to § 1421(c) or § 1447(b)* * * * * We now join them in reaching the same conclusion") (emphasis added)). Indeed, district courts in the Second Circuit have interpreted *Ajlani* as requiring dismissal without prejudice in § 1421(c) cases. See, *e.g., DeLeon v. Napolitano,* 2011 WL 1990876, at *2 (S.D.N.Y. May 23, 2011) (granting dismissal in § 1421(c) case).

Beyond her somewhat misguided focus on jurisdiction (given that Defendants are not moving to dismiss on 12(b)(1) grounds and have never argued that the Court lacks jurisdiction), Plaintiff advances two legal arguments that merit discussion. First, Plaintiff highlights the language in § 1429 that a naturalization petitioner for "whom there is a *final finding* of deportability pursuant to a warrant of arrest" (emphasis added) cannot be naturalized and contends that, because she was issued a Notice to Appear (NTA) pursuant to INA § 237(a)(1)(A) that was not accompanied by a Form I-200 (Warrant of Arrest), there has not been "a final finding of deportability pursuant to a warrant of arrest under the provisions of Section 1429, or any other act." Resp. at 8. Plaintiff's suggestion overlooks language from § 1429 which provides that "no application for naturalization shall be considered by the Attorney General if there is *pending* against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act." 8 U.S.C. § 1429 (emphasis added). Furthermore, "[f]or the purposes of [§ 1429], a notice to appear issued under 8 CFR part 239 * * * shall be regarded as a warrant of arrest." *O'Sullivan v. USCIS,* 372 F. Supp. 2d 1097, 1099 n.2 (N.D. Ill. 2005) (citing 8 C.F.R. § 318.1). Because there is a removal proceeding pending against Plaintiff, the language of § 1429 and supporting authorities indicate that her naturalization application should not be considered at this time. See also *Klene v. Napolitano*, 2011 WL 6780722, at *3 (N.D. Ill. Dec. 27, 2011).

In the Court's view, Plaintiff's strongest argument is that § 1429 precludes the Attorney General, but not the district court, from considering naturalization petitions if there are removal proceedings. Because Plaintiff seeks *de novo* review of her naturalization petition from a district court, not the Attorney General, § 1429 should not apply. The *Zayed* decision from the Sixth Circuit addressed this point directly, noting that while it generally would be hesitant to look beyond the language of the statute, in the case of § 1429, consideration of the legislative history was important. *Zayed,* 368 F.3d at 905. The court noted that the reference to the "Attorney General" came about in the 1990 amendments to § 1429, which reflected the fact that the authority to naturalize was switched from the district courts to the Attorney General. *Id.*; see also 8 U.S.C. § 1421(a) (vesting naturalization authority in the Attorney General). The Sixth Circuit described the language in § 1429 as simply a "corresponding change" meant to align the "priority provision" with the new reality that the Attorney General alone was authorized to grant naturalization. *Id.* The court observed that while § 1429 did not operate to strip the district court of jurisdiction in circumstances in which removal proceedings have commenced, it did operate to "limit the scope of the court's review and circumscribe the availability of effective remedies." *Id.* at 906. The effective remedies, the court concluded, could be no greater than what the Attorney General could grant. And since Congress barred the Attorney General from considering a naturalization request—much less granting an application—while removal proceedings are pending under § 1429, the district court cannot do so either.[2] See also *Ajlani*,

---

[2] Practically, it is important to note how this Court's review of the decision to deny naturalization works. Hypothetically, if Petitioner could win here, her relief would be an order from the Court directing the Attorney General to grant her application. Based on § 1429, such an order could have no practial effect, as the Attorney General is statutorily barred from granting the application while removal proceedings are in progress.

7

545 F.3d at 239-41) ("We think district court authority to grant naturalization relief while removal proceedings are pending cannot be greater than that of the Attorney General.").

From a policy standpoint, Plaintiff contends that a ruling in favor of Defendants in cases like this would allow the Attorney General to conduct an end run around judicial review by commencing removal proceedings as a matter of course whenever a person is denied naturalization and seeks § 1421(c) review. The *Zayed* court addressed this argument by noting that a dismissal in these cases is to be without prejudice pending the outcome of the removal proceeding, thus allowing a petitioner to obtain judicial review of a denied naturalization application if she wins on the merits in her removal proceedings. *Zayed,* 368 F.3d at 907. It also should be noted that the removal proceeding is, itself, subject to review in the circuit court under 8 U.S.C. § 1252(a)(5). Thus, it seems that colorable claims of error or abuse by Defendants can be addressed, as appropriate, on a case-by-case basis through litigation to terminate unwarranted removal proceedings. *Ajlani*, 545 F.3d at 241.

**IV.     Conclusion**

For these reasons, the Court grants Defendants' motion to dismiss [13] and dismisses Plaintiff's complaint without prejudice.

Dated:  May 1, 2012                                  _____
                                                                          Robert M. Dow, Jr.
                                                                          United States District Judge